| | |
|---|---|
| Peter L. Carr, IV (SBN 256104) | Jamon Hicks (SBN 232747) |
| Na'Shaun L. Neal (SBN 282480) | DOUGLAS\|HICKS, LLP |
| SIAS \| CARR, LLP | 8484 Wilshire Blvd, Suite 548 |
| 9701 Wilshire Blvd., 10th Fl. #282 | Beverly Hills, California 90211-3234 |
| Beverly Hills, California 90212 | Telephone:   (323) 655-6505 |
| Telephone:  (310) 400-5890 | Facsimile:    (323) 651-4990 |
| Facsimile:    (323) 400-5895 | *jamon@douglashickslaw.com* |
| *pcarr@siascarr.com* | |
| *nneal@siascarr.com* | |

*Attorneys for Plaintiffs Johnnie Howard, Sr., Angela Nishikawa and Leseante Square*

| | |
|---|---|
| V. James DeSimone (SBN 119668) | Lisa Holder (SBN 212628) |
| Kaveh Navab (SBN 280335) | LAW OFFICE OF LISA HOLDER |
| SCHONBRUN DESIMONE SEPLOW | P.O. Box 65694 |
| HARRIS & HOFFMAN LLP | Los Angeles, California 90065 |
| 723 Ocean Front Walk | Telephone: (323) 683-6610 |
| Venice, California 90291-3270 | lisaholder@yahoo.com |
| Telephone:  (310) 396-0731 | |
| Facsimile: (310) 399-7040 | |
| vjdesimone@gmail.com | |
| knavab.sdshh@gmail.com | |

*Attorneys for Plaintiffs Tushana Howard, Tawny Howard, Taneya Howard, Vachel Howard, Jr. and Skye Howard*

GREGORY A. YATES (SBN-63259)
LAW OFFICES OF GREGORY A. YATES
A Professional Corporation
16830 Ventura Blvd #250
Encino, CA 91436
Phone: (310) 858-6944
Fax: (818) 905-7038

*Attorneys for Plaintiff IRMA HOWARD*

-1-
**PLAINTIFFS' NOTICE OF JOINT MOTION AND JOINT MOTION *IN LIMINE* NO. 2 TO EXCLUDE IMPROPER EXPERT TESTIMONY**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TUSHANA HOWARD, TAWNY HOWARD, TANEYA HOWARD, VACHEL JOWARD, JR., and SKYE HOWARD, SR., individually and as successors-in-interest of VACHEL HOWARD and, JOHNNIE HOWARD, SR., in his individual capacity,<br><br>Plaintiffs,<br>vs.<br><br>CITY OF LOS ANGELES, Police Officer Richard Fox, Police Officer Maryann Bunag, Detention Officer Juan Romero, individually, Police Chief CHARLIE BECK, in his individual and official capacity,<br><br>Defendants.<br>CONSOLIDATED ACTIONS<br>_____ | CASE NO.: CV 13-01847 SJO (JEMx)<br>c/w: 14-CV-02781 SJO (JEMx)<br>c/w: CV 14-03423 SJO(JEMx).<br><br>**PLAINTIFFS' NOTICE OF JOINT MOTION AND JOINT MOTION IN LIMINE NO. 2 TO EXCLUDE IMPROPER EXPERT TESTIMONY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br>**Pre-Trial Conference:**<br>Date:   09/14/2015<br>Time:   9:00 am<br>Ctrm.:   1<br><br>Trial Date: September 22, 2015 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

PLEASE TAKE NOTICE that on September 14, 2015, at 9:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 1 (Spring Street) of the above-entitled Court, Plaintiffs will and hereby do move the Court by way of this Motion In Limine No. 2 To Exclude Improper Expert Testimony at the trial of this matter. Plaintiffs make this Motion under Federal Rules of Evidence 403, 611, 701 and 702, and under <u>Fed. R. Civ. P.</u> 37(c).

**Statement of Local Rule 7-3 Compliance**: This motion is made following the meet and confer conference between counsel for Plaintiffs and Defendants, during which no resolution could be reached.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the records and files of this Court, Declaration of Gregory A.

Yates, and upon such other oral and documentary evidence as may be presented at the time of the hearing.

          Respectfully Submitted,
          LAW OFFICES OF GREGORY A. YATES, P.C.
          16830 Ventura Blvd., # 250
          Encino, California 91436
          Tel: (310) 858-6933;
          Fax: (818) 905-7038

                  /s/
          By: _____
          Gregory A. Yates
          COUNSEL FOR PLAINTIFF IRMA HOWARD

## **TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................. 6

II.  FED. R. CIV. P. 37 PRECLUDES A PARTY FROM USING AT TRIAL INFORMATION NOT PREVIOUSLY DISCLOSED ..................................... 6

III. FED. R. EV. 702 REQUIRES AN EXPERT BE QUALIFIED AND THE OPINION GIVEN BE RELIABLE............................................................................... 9

IV. FED. R. EV. 403 ALLOWS THE COURT TO EXCLUDE CUMULATIVE TESTIMONY ................................................................................................ 11

V.  EXPERT OPINIONS ON THE ULTIMATE ISSUES OF THE REASONABLENESS OF THE USE OF FORCE AND COCAINE INDUCED BEHAVIOR PROVOKED POLICE OFFICERS DO NOT ASSIST THE TRIER OF FACT AND ARE A WASTE OF TIME...................................................................................................... 14

VI. CONCLUSION............................................................................................... 17

**Federal Cases**

Abrams v. Ciba Specialty Chemicals Corp., No. CIV.A. 08-0068-WS-B, 2010 WL 779283, at
    *4-5 (S.D. Ala. Mar. 2, 2010) ................................................................................................ 9

Aguilar v. Int'l Longshoremen's Union Local No. 10, 966 F.2d 443, 447 (9th Cir.1992) ........... 16

Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589-90 (1993) ........................................... 6

First Nat'l Bank of Louisville v. Lustig, 96 F.3d 1554, 1574-75 (5th Cir.1996) ........................ 11

Goodman v. Staples The Office Superstore, LLC, 644 F. 3d 817 (9th Cir. 2011 ......................... 7

McHugh v. United Serv. Auto. Ass'n, 164 F.3d 451, 454 (9th Cir. 1999) ................................... 16

Shahid v. City of Detroit, 889 F. 2d 1543 (6th Cir. 1989); ......................................................... 16

TK-7 Corp. v. Estate of Barbouti, 993 F.2d 722, 732 (10th Cir.1993) ......................................... 9

Tran v. Toyota Motor Corp., 420 F.3d 1310, 1315 (11th Cir.2005) ........................................... 11

U.S. v. Dukagjini, 326 F. 3d 45, 56-62 (2d Cir. 2003) .............................................................. 7, 8

United States v. Barnard, 490 F. 2d 907, 912-13 (9th Cir. 1973) ............................................... 16

United States v. Duncan, 42 F.3d 97, 101 (2nd Cir. 1994) ......................................................... 16

United States v. Frazier, 387 F.3d 1244, 1263 (11th Cir.2004) .................................................. 11

United States v. Proctor & Gamble Co., 356 U.S. 677, 682 (1958). ............................................ 7

US v. Freeman, 498 F. 3d 893, 901-905 (9th Cir. 2007 ............................................................... 8

**Federal Rules**

F.R.E. 702 ................................................................................................................................ 9, 16

F.R.E. 703 ..................................................................................................................................... 7

F.R.E. 704, Advisory Committee Notes .................................................................................... 15

Fed. R. Civ. P. Rule 26(a)(2) ........................................................................................................ 7

Fed. R. Civ. P. Rule 26(a)(4) ........................................................................................................ 7

Fed. R. Civ. P. Rule 37(c)(1) ........................................................................................................ 7

Fed. R. Ev. 611 ........................................................................................................................... 11

Fed. R. Ev. 701 ............................................................................................................................. 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This matter arises from an in custody death that occurred on June 4, 2012. Plaintiffs' father and son, Vachel Howard, was placed in an out of policy choke hold by Defendant Romero and asphyxiated. Plaintiff brought a §1983 action alleging that the use of deadly force by Officer Romero was unjustified, unreasonable and excessive under the circumstances.

Defendant has designated five (5) experts in this case: Dr. Richard F. Clark, Dr. Mark Eckstein, Richard Fonzi, Dr. Steven B. Karch, and Dr. William Oliver. By this motion, plaintiff seeks to exclude expert testimony by any other witness, unqualified expert testimony, cumulative expert testimony and confusing expert testimony.

Expert opinions may be excluded where based on improper matter. <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579, 589-90 (1993).

## II. FED. R. CIV. P. 37 PRECLUDES A PARTY FROM USING AT TRIAL INFORMATION NOT PREVIOUSLY DISCLOSED

<u>Fed. R. Ev.</u> 701 provides that

*"If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."*

Under Fed. R. Civ. P. Rule 26(a)(2), a party must timely designate experts by furnishing information requested in that rule, including "a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the

opinions." Rule 26(a)(4) provides that "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial."

Fed. R. Civ. P. Rule 37(c)(1) provides, in pertinent part, that,

*"A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed..."*

New expert opinions by non-designated experts will subject plaintiff to prejudice in that plaintiff was not allowed to fully depose these witnesses on their expert opinions and plaintiff will be subject to surprise testimony.

The purpose of the discovery rules is to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practical extent." United States v. Proctor & Gamble Co., 356 U.S. 677, 682 (1958). These rules are intended to minimize unfair surprise and undue expense. Accordingly, defendant should not be permitted to offer expert opinion by non-designated experts.

It is anticipated that Defendants will attempt to offer expert testimony of officers and other witnesses by claiming they are non-designated percipient expert witnesses that are qualified to explain complex subjects such as police procedure and training and the cause of Mr. Howard's death. It is also anticipated that Defendants will attempt to elicit hearsay testimony from such percipient witnesses. Such testimony is improper under the federal rules. While percipient witnesses are not required to provide an expert report, they are required to be disclosed. See F.R.C.P. 26(a)(2). See also Goodman v. Staples The Office Superstore, LLC, 644 F. 3d 817 (9th Cir. 2011)(finding that percipient witness testimony that goes beyond a factual explanation into opinion testimony is subject to the report requirement in Rule 26(a)(2)(B)).

Any witnesses that were not identified as experts by Defendant should be precluded from testifying to ultimate issue opinions, unsupported speculation in the guise of expert opinion, and hearsay because only experts can offer such testimony. See F.R.E. 703. See also U.S. v. Dukagjini, 326 F. 3d 45, 56-62 (2d Cir. 2003) (to the extent that an investigating agent, who was

-7-
**PLAINTIFFS' NOTICE OF JOINT MOTION AND JOINT MOTION *IN LIMINE* NO. 2 TO EXCLUDE IMPROPER EXPERT TESTIMONY**

1  testifying as an expert witness, was relying on and disclosing out of court inadmissible hearsay
2  that was obtained through the course of his investigation, the witness exceeded the scope of his
3  expertise and that testimony should not have been admitted.). Further, use of involved and
4  investigating officers as experts should be scrutinized because they have a higher likelihood of
5  straying from reliable methodology into conclusory assertions. See e.g. Dukagjini, 326 F.3d at
6  54-56 (stating: "when the prosecution uses a case agent as an expert, there is an increased danger
7  that the expert testimony will stray from applying reliable methodology and convey to the jury
8  the witness's 'sweeping conclusions' about appellants' activities, deviating from the strictures of
9  Rules 403 and 702."). See also US v. Freeman, 498 F. 3d 893, 901-905 (9th Cir. 2007)(following
10 Dukagjini and finding it was error to allow certain testimony by an investigating agent). The
11 dangers associated with percipient witnesses risks damage to due process in this case resulting
12 from the failure to designate such witnesses as expert witnesses and disclose their expected
13 testimony under Rule 26(a)(2) because Plaintiff will be prevented from preparing to rebut such
14 testimony. See Proctor & Gamble Co., 356 U.S. at 682.

15       Robert Fonzi is expected to rely on the conclusion of Officer Fox, purportedly a drug
16 recognition expert, and Nurse Rowe as to whether Vachel Howard was on drugs at the time of
17 his arrest. Neither Officer Fox nor Nurse Rowe have been designated drug recognition experts.
18 In his preliminary report, Fonzi states: "Officer Fox, who is a department DRE (drug recognition
19 expert), noticed that Howard displayed objective symptoms that were consistent with an
20 individual being under the influence of PCP (phencyclidine) or cocaine." (See Report of Robert
21 Fonzi ("Fonzi Report"), attached as Ex 1 to Decl. of Gregory A. Yates ("Decl. Yates"), p. 4).
22 Fonzi later states: "Nurse Rowe observed and noted that Howard appeared to be hallucinating
23 and in her opinion, was under the influence of either PCP, cocaine or methamphetamines." *Id* at
24 p. 5. Fonzi then concludes: "Based on my review of the mentioned materials and statements, it is
25 my preliminary opinion that the actions of the officers involving Howard and his obvious
26 narcotic intoxication was appropriate, reasonable, and consistent with standard jail and police
27 standards and training." *Id*. An expert relying on the opinion of a purported undesignated expert
28 must demonstrate that it is reliable and not an attempt to circumvent the rules of evidence. See

e.g. <u>TK-7 Corp. v. Estate of Barbouti</u>, 993 F.2d 722, 732 (10th Cir.1993); <u>Abrams v. Ciba Specialty Chemicals Corp.</u>, No. CIV.A. 08-0068-WS-B, 2010 WL 779283, at *4-5 (S.D. Ala. Mar. 2, 2010) . In this case, Officer Fox and Nurse Rowe, as undesignated experts, cannot give opinion testimony and, therefore, the expected testimony of Fonzi as to these witnesses conclusions, as opposed to their observations, is an attempt to circumvent Rule 26.

Similarly, Fonzi is expected to communicate the opinion rendered as a result of the District Attorney investigation. The District Attorney has not been designated as an expert and, therefore, Fonzi's testimony is simply an attempt to circumvent the bar against hearsay and disclose an otherwise irrelevant and inadmissible opinion cloaked in the air of an official position.

Plaintiff requests that undisclosed expert testimony be excluded.

### III.
### FED. R. EV. 702 REQUIRES AN EXPERT BE QUALIFIED AND THE OPINION GIVEN BE RELIABLE

Fed. R. Ev. 702 provides:

*A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:*

*(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;*

*(b) the testimony is based on sufficient facts or data;*

*(c) the testimony is the product of reliable principles and methods; and*

*(d) the expert has reliably applied the principles and methods to the facts of the case.*

F.R.E. 702.

It is expected that certain lay witnesses, including defendants Fox, Bunag, and Romero will offer testimony that Vachel Howard had "super human strength," was as strong as "the hulk," or was suffering from psychosis. The terms super human strength and hulk are unhelpful, meaningless, subjective, descriptions. More specifically these metaphors are highly prejudicial with no probative value. Moreover, opinions regarding Mr. Howard's mental state require

-9-
**PLAINTIFFS' NOTICE OF JOINT MOTION AND JOINT MOTION *IN LIMINE* NO. 2 TO EXCLUDE IMPROPER EXPERT TESTIMONY**

specialized knowledge, skill, experience, training or education. The witnesses expected to offer this testimony have not been designated as experts and are not qualified under Rule 702 to offer such testimony.

It is also expected Defendants will attempt to establish through expert testimony that Vachel Howard was a chronic drug user. However, Defendants' experts have testified they do not have enough information to ascertain whether Vachel had used cocaine for a prolonged period and therefore, any mention of chronic drug use is unreliable opinion testimony. See Deposition of Dr. Richard F. Clark ("Dep. Clark"), attached as Ex. 2 to Decl. Yates, ll. 45:3-48:11. Dr. Clark, a toxicologist, testified:

> *A    Well, the only way, in my perspective, as an expert in toxicology, that one can come to the conclusion of someone being a chronic user is a history. And if I get a history somewhere in the records that he uses cocaine on a daily basis, that usually signifies chronic use.*
>
> *But I think you're correct that from one given blood level, it's hard for me to say that….*

Dep. Clark 45:9-16. Dr. Clark admitted that the duration of use could not be stated with medical certainty given blood levels. *Id* at 46:6-7. Dr. Karch, a forensic pathologist testified that he could provide an opinion as to chronic use with certainty if a hair sample had been taken or if special heart testing had been done. See Deposition of Steven B. Karch ("Dep. Karch"), attached as Ex. 3 to Decl. Yates, ll. 92:12-95:11. However, there was no hair sample and the special heart test was not performed. Karch claimed that the toxicological results from Vachel's blood indicated a built up tolerance but admitted that tolerance builds up quickly. See *id* at 100:19-101:15, 101:23-102:8. Defendants have admitted that the opinion that Vachel was a chronic user is scientifically unreliable.

Plaintiff requests that unqualified and unreliable testimony be excluded.

///

///

///

## IV.
## FED. R. EV. 403 ALLOWS THE COURT TO EXCLUDE CUMULATIVE TESTIMONY

The court has the authority to limit the number of witnesses that are called by a party to testify to a specific point. Fed. R. Ev. 403 Provides:

> *The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.*

F.R.E. 403. Further, Fed. R. Ev. 611 states that, "The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to ... [a]void wasting time ..." See also Tran v. Toyota Motor Corp., 420 F.3d 1310, 1315 (11th Cir.2005) (affirming district court's exclusion of cumulative expert testimony at trial, where excluded expert relied on same evidence that testifying expert did, would have testified on same issues, had similar qualifications, and would not have added different information); United States v. Frazier, 387 F.3d 1244, 1263 (11th Cir.2004) ("Exclusion under Rule 403 is appropriate ... if the expert testimony is cumulative or needlessly time consuming") (citations omitted); First Nat'l Bank of Louisville v. Lustig, 96 F.3d 1554, 1574–75 (5th Cir.1996) (district court did not abuse discretion in excluding as cumulative expert's testimony that would have covered the same ground as that of testifying witness).

In this case, it is anticipated that Defendants' expert witnesses may attempt to address the same issues. Specifically, Defendant has designated four experts on the issue of the manner and cause of the death of Vachel Howard, Dr. Richard F. Clark, Dr. Mark Eckstein, Dr. Steven B. Karch, and Dr. William Oliver. Essentially, these experts are piling on by testifying to the exact same medical conclusion. Such cumulative, duplicative testimony is improper and should be limited.

To the extent that these experts attempt to revisit the subject of testimony of their fellow

experts on the point, it is unnecessarily cumulative. Each of Defendants' four medical experts has opined that Vachel's heart condition, combined with cocaine use, caused his death. Dr. Karch opined in his report:

> 1. The decedent had a markedly enlarged heart, placing him at risk for sudden death.
>
> 2. The decedent had myocardial scarring, probably as a consequence of longterm cocaine abuse, again placing him at risk for sudden death.
>
> 3. In addition to restricting blood flow, fibrosis (scars) located between the individual heart muscle cells disrupt the normal pattern of electrical signaling in the heart and can cause sudden cardiac death.
>
> 4. I believe with a high degree of medical certainty that pre-existing cardiovascular heart disease, secondary to chronic, long-term, cocaine abuse, was the cause of death.

Report of Dr. Steven B. Karch dated 12/17/13 ("Karch Report"), attached as Ex. 4 to Decl. Yates, p. 9. Dr. Clark provided an identical opinion:

> 11. During this excited delirium, subjects are also at risk for sudden death. This sudden death syndrome can occur while the victim is in custody, in a jail cell, on a hospital or ambulance gurney, or involved in some other activity such as dancing at a party. The mechanism of the sudden death syndrome is unclear, but has been suggested to be from either an irregular heart rhythm or a seizure, resulting from a combination of effects, including electrolyte (chemical) abnormalities, elevated body temperature, and elevated adrenaline levels in the body (caused to be released into the body by the drug). These effects act synergistically with the drug on the body. The most common electrolyte abnormalities in patients with these excited delirium states and extreme struggles are elevations in potassium, and increased acidity of the blood (i.e. "metabolic acidosis").

Both of these electrolyte disorders can cause the heart to be more susceptible to potentially lethal irregular rhythms, such as ventricular tachycardia or fibrillation. Either a seizure or an irregular heart rate can lead to cardiac arrest. Many times, once these subjects deteriorate from the rapid heart rate (ventricular tachycardia) into cardiac arrest, they go into a slower "agonal" or pre-death heart rhythm (eventually no rhythm, called asystole) and cannot be resuscitate, even when the cardiac arrest is a witnessed event in front of paramedics, nurses, physicians, or other health care providers. The difficulty in their resuscitation may be the result of many things, including a high potassium level in the blood or a metabolic acidosis caused by the agitation or seizure, and can be complicated by the effects of the drug. This scenario is what was described in the cardiac arrest and eventual death of Mr. Howard. In his particular case, he was witnessed to be struggling violently, paranoid, hallucinating and fighting police seconds or minutes prior to his witnessed cardiac and respiratory arrest. His struggle with police could have resulted in a metabolic acidosis of his blood, a condition that caused his heart to be more susceptible to the toxic effects of cocaine, and more likely to have an irregular heart rhythm and cardiac arrest. In addition, Mr. Howard was found at autopsy to have several areas of narrowing of his cardiac blood vessels (atherosclerosis). These narrowed segments could have restricted blood flow to his heart in times of extreme stress, such as during his struggle with police. Cocaine has been well proven to further constrict the blood vessels of the heart, leading to even greater restriction to blood flow to heart muscle. This low blood flow state, combined with the actions of cocaine on the conduction of impulses of the heart could have led to an irregular heart rhythm, culminating in the cardiac arrest.

> 12. Based on my knowledge of this case and the disciplines of Medical Toxicology and Emergency Medicine, I believe it is medically probable that Vachel Howard was under the influence of and intoxicated by cocaine at the time of his death on June 4, 2012, and this contributed to or led to his bizarre, agitated and violent behavior with police officers. It is medically probable that the influence of this drug contributed to his confrontation with officers that eventually led to his death.

Report of Dr. Richard F. Clark dated 12/7/13 ("Clark Report"), attached as Ex. 5 to Decl. Yates, pp. 4-5. Dr. Eckstein provided an identical opinion:

> 6. The effects of a high level of cocaine intoxication in combination with a severely diseased heart and the effects of excited delirium resulted in Mr. Howard's death. High levels of cocaine intoxication can, in and of themselves, result in a lethal cardiac dysrhythmia. However, high cocaine levels combined with near total occlusion of the right coronary artery in an already enlarged heart, combined with the effects of excited delirium proved to be lethal in this case.

Report of Dr. Marc Eckstein dated 12/10/13 ("Eckstein Report"), attached as Ex. 6 to Decl. Yates, p. 5. See also Report of Oliver dated January 10, 2015 ("Oliver Report"), attached as Ex. 7 to Decl. Yates, p. 8-14.

Allowing the unnecessary duplicative testimony will prolong the trial, waste the valuable time and resources of the Court and all other participants, while adding absolutely nothing new to the evidence and adding no probative value to the case.

V.
EXPERT OPINIONS ON THE ULTIMATE ISSUES OF THE REASONABLENESS OF THE USE OF FORCE AND COCAINE INDUCED BEHAVIOR PROVOKED POLICE OFFICERS DO NOT ASSIST THE TRIER OF FACT AND ARE A WASTE OF TIME

Plaintiff contends that the issue of reasonableness of the use of force in this case has been decided in an administrative adjudication that was not appealed and, therefore, the finding is issue preclusive. See <u>Plaintiff Irma Howard's Opposition To Defendants' Motion For Summary Judgment And Joinder In The Opposition Filed By Tushana Howard, Et Al</u> (Document 143), pp. 10-11. In addition, Plaintiff maintains that the report of Chief Beck and the decision of the Board of Police Commissioners is an admission of a party opponent as to the unreasonableness of the use of force. See *Id* at p. 12, ll. 4-8. However, if the findings of Chief Beck and the Commissioners are not given some preclusive or evidentiary effect, the issue of reasonableness of the use of force is an issue of fact for the jury to decide and expert opinion on the subject would impermissibly confuse the jury. Therefore, expert opinion as to the reasonableness of the use of force should be precluded.

Whether or not Officer Romero's use of deadly force was reasonable is an ultimate issue in this case. As an ultimate issue, this Court must be careful not to allow an invasion into the province of the jury. Although Fed. R. Ev. 704 permits testimony on ultimate issues, the advisory committee notes to Rule 704 state, in pertinent part:

> *[t]he abolition of the ultimate issue rule does not lower the bar so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria...*

F.R.E. 704, Advisory Committee Notes.

It is expected that Robert Fonzi will testify that the use of force in this case was reasonable. It is for the jury, and not for Mr. Fonzi, to make credibility determinations and to decide which set of facts it believes. See United States v. Barnard, 490 F. 2d 907, 912-13 (9th Cir. 1973) ("Credibility, however, is for the jury — the jury is the lie detector in the courtroom); Shahid v. City of Detroit, 889 F. 2d 1543 (6th Cir. 1989); McHugh v. United Serv. Auto. Ass'n, 164 F.3d 451, 454 (9th Cir. 1999) ; United States v. Duncan, 42 F.3d 97, 101 (2nd Cir. 1994) ("When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's."). Further, matters of law are "inappropriate subjects for expert testimony." Aguilar v. Int'l Longshoremen's Union Local No. 10, 966 F.2d 443, 447 (9th Cir.1992).

Expert opinion testimony is admissible only if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Ev. 702. The only disputed issues at trial will be whether Officer Romero reasonably believed Vachel Howard constituted a deadly threat and reasonably used deadly force in response. It is for the jury to determine what facts were known to Romero at the time he used a chokehold on Vachel. None of Robert Fonzi's testimony will assist the jury in this regard. Fonzi's anticipated testimony involves only his views concerning the reasonableness of Officer Romero's conduct based on hearsay information conveyed to him. Specifically, Fonzi is expected to simply communicate the opinion as to reasonableness that resulted in the District Attorney investigation. To that end, his testimony will not be a fact-based opinion, but a credibility determination and legal conclusion. The District Attorney's opinion is not binding or preclusive in any way but is simply an improper and inadmissible opinion as to reasonableness under the Constitution. It is the jury's job to determine reasonableness under the Constitution.

Similarly, testimony that the effects of cocaine caused Vachel to behave in a manner that created the situation that led to Vachel's death is unhelpful to the jury Specifically, Dr. Clark testified in his deposition that Vachel's conduct contributed to his death:

*A   Well, it did lead to his death. He died. And I would say, with a reasonable degree of medical possibility, that if it wasn't for the influence of cocaine, this whole interaction wouldn't have happened.*

See Dep. Clark 84:13-17. See also Dep. Clark 86:4-87:12; Clark Report, p. 5 (stating: It is medically probable that the influence of this drug contributed to his confrontation with officers that eventually led to his death."). The testimony that Vachel's conduct prompted a use of force from the involved officers is not something that requires expert testimony to understand and, thus, is unhelpful. The jury is fully capable of evaluating any contribution of Vachel Howard to his own death without the need for expert opinion.

Plaintiff requests that testimony that does not assist the trier of fact be excluded.

## VI.
## CONCLUSION

Based on the above, it is respectfully requested that the Court exclude any and all evidence, references to evidence, testimony or argument relating to expert opinions by non-designated witnesses and employees, unqualified expert testimony, cumulative expert testimony and testimony that would confuse the jury.

In the alternative, it is respectfully requested that the Court will conduct a hearing, prior to the testimony of any expert or percipient witness expected to provide expert opinions, to determine whether the proposed testimony was disclosed, the witness' qualifications, and whether the proposed testimony is unnecessarily cumulative.

Respectfully Submitted,
LAW OFFICES OF GREGORY A. YATES, P.C.
16830 Ventura Blvd., # 250
Encino, California 91436
Tel: (310) 858-6933;
Fax: (818) 905-7038

    /s/
By: _____
Gregory A. Yates
COUNSEL FOR PLAINTIFF IRMA HOWARD